IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-1037

**BRUCE PANCZNER,**

      Plaintiff

vs.

**WESTERN ADVENTURES, INC.** and
**LESLEY A. FRASER, M.D.**,

      Defendants

---

## COMPLAINT FOR DAMAGES AND JURY DEMAND

---

Comes Now Plaintiff, Bruce Panczner, by and through counsel, Anthony Viorst of the Viorst Law Offices, P.C., and for his complaint against the above-named Defendants states as follows:

## CERTIFICATION

Undersigned counsel hereby certifies, pursuant to C.R.S. §13-20-602(3), that: (a) he has consulted with a physician with expertise in the area of the alleged negligent conduct as set forth in Plaintiff's complaint; (b) the physician who has been consulted has reviewed all known facts relevant to the allegations of negligent conduct as complained of in Plaintiff's complaint; (c) based upon such facts, this physician has concluded that the filing of the claims in the instant case does not lack substantial justification within the meaning of C.R.S. §13-17-102(4); and (d) the physician who has reviewed all known facts relevant to the allegations of negligent conduct as contained in Plaintiff's complaint meets the requirements set forth in C.R.S. §13-64-401.

## JURISDICTION AND VENUE

1. At all times relevant, Defendant Western Adventures, Inc. ("Great Western Adventures") was a Colorado corporation, offering snowmobile tours and rentals, with its headquarters at 0555 Allen Way, Woody Creek, CO 81656.

2.      At all times relevant hereto, Defendant, Lesley Fraser, M.D. ("Dr. Fraser") was a general surgeon working at the Aspen Valley Hospital located at 0401 Castle Creek Road, Aspen, CO 81611.

a. Plaintiff Bruce Panczner ("Panczner") is an individual residing at 1470 Clayton Road, West Chester, PA 19382.

3.      Diversity jurisdiction exists, pursuant to 28 U.S.C. §1332, as all of the parties are residents of different states, and the amount in controversy exceeds $75,000.00.

4.      Venue is proper in Colorado because that is where the tortious acts occurred.

## FACTUAL BACKGROUND

5.      On February 9, 2016, Panczner and two friends went to Great Western Adventures in Woody Creek, Colorado, for the purpose of renting three snowmobiles.  It was Panczner's intention that he and his two friends would drive the snowmobiles on a hut trip in the Aspen area.

6.      At the time that Panczner rented the snowmobiles, Panczner and his friends told Great Western Adventures employees about their plans, and showed Great Western Adventures employees their gear.  Based upon this information, Great Western Adventures employees recommended certain snowmobiles for rental, and also recommended a travel route, and Panczner followed these recommendations.

7.      Thereafter, Panczner and his friends embarked on their snowmobile trip, but the snowmobiles were not suitable for deep snow conditions, and therefore unable to traverse the route recommended by Great Western Adventures.  As a result, the snowmobiles became stuck in the snow.

8.      While digging out the stuck snowmobiles, Panczner's boots became filled with snow, which thereafter melted due to body heat.

9.      Unable to reach their destination or travel back, Panczner contacted the Pitkin County Sheriff's Department, and spent the night outside in a snow cave while waiting for rescuers to arrive.

10.     That night, Panczner's soaking wet socks froze in the sub-freezing temperatures. Upon information and belief, Panczner began to suffer frostbite on the morning of February 10, 2016.

11.     When rescuers from the Sheriff's Department arrived at approximately 10 a.m. on the morning of February 10, 2016, they told Panczner and his friends that their snowmobiles were not powerful enough for the current snow conditions, especially when those snowmobiles were saddled with travel gear.

12.     In addition, the rescuers asked to see Panczner's feet and, after observing their condition, immediately took Panczner to Aspen Valley Hospital for treatment of frostbite.

13.     At Aspen Valley Hospital, Panczner was under the care of Dr. Fraser for frostbite to Panczner's feet, which was located on both forefeet and heels.  Dr. Fraser oversaw the treatment of Panczner's feet.  Even though Panczner's feet looked worse after being rewarmed, Dr. Fraser offered him no remedial treatment other than prophylaxis for blood clots.

14.     During the time Panczner was at Aspen Valley Hospital, he researched frostbite treatment and read that tissue plasminogen activator (tPA) treatment, used frequently at University of Colorado Hospital's Burn Center, significantly decreases the likelihood of amputation to extremities if administered within 24 hours of injury.

15.     Subsequently, Panczner approached Dr. Fraser about the treatment but was told there was no frostbite treatment available in the Denver metropolitan area that was not available in Aspen under his care.

16.     At Panczner's insistence, Dr. Fraser finally contacted the burn unit at University of Colorado, came back to Panczner to apologize, and stated that Panczner needed to be transferred there as quickly as possible.

17.     Panczner was transported by Flight-For-Life to the University of Colorado Hospital and arrived in the afternoon of February 11, 2016.  Unfortunately, because of the delay caused by Dr. Fraser, Panczner arrived outside of the 24-hour window in which tPA treatment can be beneficially administered to frostbite victims.

18.     Without tPA treatment available, the Burn Center decided to transfer Panczner to Poudre Valley Hospital, in order to undergo hyperbaric oxygen treatment.

19.     Ultimately, the emergency medical treatment at University of Colorado Hospital and Poudre Valley Hospital was unsuccessful, and all of the toes and parts of the forefoot on both feet had to be amputated.

### FIRST CLAIM FOR RELIEF
(Negligence – Great Western Adventures)

20.     Plaintiff hereby incorporates the above averments as though fully set forth herein.

21.     Great Western Adventures is vicariously liable for the negligent acts and omissions of its employees, under the doctrine of respondeat superior.

22.     With respect to their care and treatment of Panczner, Great Western Adventures personnel owed Panczner a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of snowmobile-rental-company employees in similar situations. The Great Western Adventures personnel in question deviated from that standard, and

were negligent, by failing to inform Panczner that the snowmobile he was renting, was not powerful enough for the current snow conditions, especially when saddled with Panczner's travel gear.

23.     As a direct and proximate result of the conduct of the Great Western Adventures personnel, Panczner's snowmobile got stuck in the snow and he developed frostbite, thereby suffering amputation of all toes and parts of the forefoot on both feet, as well as extensive medical and rehabilitative treatment. As a result of his injuries and related medical treatment, Panczner suffered economic damages, in the form of medical expenses and lost income, as well as noneconomic damages, including pain and suffering, emotional distress, and loss of quality of life.

**SECOND CLAIM FOR RELIEF**
(Medical Negligence – Dr. Fraser)

24.     Plaintiff hereby incorporates the above averments as though fully set forth herein.

25.     On February 10, 2016, Panczner was placed under the care and treatment of Dr. Fraser for severe frostbite.

26.     With respect to his care and treatment of Panczner, Dr. Fraser owed a duty to exercise that degree of care, skill, caution, diligence, and foresight exercised by and expected of doctors in similar situations. Dr. Fraser deviated from that standard and was negligent in the following ways:

> A.     Failing to administer tPA treatment within the first 24 hours Panczner suffered his frostbite injury;
>
> B.     Failing to timely transfer Panczner to a medical facility that could administer tPA treatment;
>
> C.     Failing to have a working knowledge that tPA treatment was available for victims of severe frostbite;
>
> D.     Failing to have a working knowledge of which Colorado hospitals provided tPA treatment for severe frostbite.

27.     As a direct and proximate result of the conduct of Dr. Fraser, Panczner suffered amputation of all toes and parts of the forefoot on both feet, and has undergone extensive medical and rehabilitative treatment. As a result of his injuries and related medical treatment, Panczner suffered economic damages, in the form of medical expenses and lost income, as well as noneconomic damages, including pain and suffering, emotional distress, and loss of quality of life.

WHEREFORE, Plaintiff prays for compensatory damages in favor of the Plaintiff and

against the Defendants in an amount to be determined by the trier of fact, pre-judgment interest, post-judgment interest, expert witness fees, filing fees, deposition expenses, and for such other and further relief as this Honorable Court may deem appropriate, including all costs.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**.

Dated this 26th day of April, 2017.

THE VIORST LAW OFFICES, P.C.

*s/ Anthony Viorst*

Anthony Viorst, No. 18508
Viorst Law Offices, PC
950 South Cherry Street, Suite 300
Denver, CO 80246
Telephone: (303) 759-3808
Facsimile: (303) 333-7127
E-mail: tony@hssspc.com
Attorney for Plaintiff